497 So.2d 1200 (1986)
Phillip A. ATKINS, Appellant,
v.
STATE of Florida, Appellee.
No. 65974.
Supreme Court of Florida.
October 30, 1986.
Rehearing Denied December 22, 1986.
Jack T. Edmund and Marshall G. Slaughter, Bartow, for appellant.
Jim Smith, Atty. Gen., and William E. Taylor, Asst. Atty. Gen., Tampa, for appellee.
BOYD, Justice.
In the late afternoon of September 23, 1981, Phillip Atkins, then age twenty-six, invited Antonio Castillo, who was six years old, to go for a car ride in the Lakeland area of Polk County. Later that evening young Antonio was found unconscious but alive, lying in a dirt road, wheezing and choking as he struggled to live. Antonio had been severely beaten about the head with a blunt instrument. He died in the emergency room of Lakeland General Hospital. His step-father was called to the hospital to verify the identity of the murdered boy, who by that time had been missing from his home neighborhood for several hours and had been reported as missing to the police.
Phillip Atkins was convicted of the murder of Antonio, based upon a confession and other evidence. The jury recommended a sentence of death and such a sentence was imposed by the court. On appeal, this Court affirmed the convictions of murder and kidnapping, but vacated the death sentence and remanded for reconsideration of the sentence to be imposed for the capital offense. Atkins v. State, 452 So.2d 529 (Fla. 1984). On remand, the trial court heard arguments of counsel, reconsidered the sentencing question, and again sentenced Phillip Atkins to death. Atkins now seeks appellate review of that sentence. He is entitled to such an appeal and this Court has jurisdiction thereof. Art. V, § 3(b)(1), Fla. Const.; § 921.141, Fla. Stat. (1981).
Appellant argues that the trial court did not perform a proper and valid resentencing as mandated by this Court. Appellant *1201 says that the sentencing judge merely deleted the findings previously ruled improper by this Court, re-adopted his other previous findings and re-imposed the death sentence without engaging in any meaningful weighing of the various circumstances. Thus, appellant concludes, the new death sentence does not represent the exercise of reasoned judgment as required by law.
Appellant relies on Lucas v. State, 417 So.2d 250 (Fla. 1982), where this Court vacated a death sentence reimposed after remand because the record showed the trial judge had not engaged in any real, meaningful reconsideration of the matter of sentencing when the issue came before him a second time. Appellant says that because the sentencing judge issued most of the same findings he originally made when imposing the first death sentence, this case is like and should be controlled by Lucas. We disagree. The mere fact that many of the same findings of fact are made does not conclusively indicate that there was no meaningful reconsideration and no exercise of reasoned judgment in the resentencing.
Our previous decision vacating the death sentence and remanding for resentencing was based upon the fact that the court had considered an aggravating circumstance which this Court found to be improper. We found no fault with the evidence or argument presented to the jury at the sentencing phase. Accordingly, on remand no additional evidence was presented. The court heard arguments of counsel on both sides of the issue. The record shows that after the hearing, the judge called a court recess to reflect upon what he had heard.
Subsequently the court issued findings of fact regarding the aggravating and mitigating circumstances as required by section 921.141. The findings read in pertinent part as follows:
1. As an aggravating circumstance, the capital felony, that is, the murder of Antonio Castillo, a six year old child, was committed while the defendant was engaged in the crime of kidnapping. [§ 921.141(5)(d), Fla. Stat. (1981).] The defendant was found guilty of kidnapping by the jury and, in the view of the Court, there was a sufficient basis for the jury to reach that verdict.
2. As an aggravating circumstance, the Court finds that the capital felony was committed for the purpose of avoiding or preventing a lawful arrest. [§ 921.141(5)(e), Fla. Stat. (1981).] The victim, almost immediately after the sexual acts occurred, asked to see a "haunted house" which the victim believed to be in the area. When the defendant said they had to go home, the victim then stated that if the defendant did not let him see the haunted house he would tell his parents what the defendant had done. The defendant then struck the child for the first time and began a chain of events that resulted in the death of the child. The Court finds that the killing was to prevent the child from disclosing the defendant's act to the parents, which disclosure would undoubtedly have led to his arrest.
3. As a further aggravating circumstance, the Court finds that the capital felony was especially heinous, atrocious and cruel. [§ 921.141(5)(h), Fla. Stat. (1981).] The six year old victim was taken by the defendant to a wooded area on the south side of Lakeland, Florida. After the victim threatened to tell his parents, the victim was hit and knocked unconscious with a steel rod. Two young men then happened upon the defendant and the victim. The defendant immediately picked up the victim, indicated it was his child, and stated that the victim had fallen and injured himself. He indicated, in response to questions, that he would take the child for medical attention. From the descriptions of the witnesses, the child was unconscious at this time and may have had some respiratory problem, since some breathing difficulty can be inferred from the description. The child was pale. He was not bloody and did not have the injuries that were on him when he was later found. The defendant left the area and was observed to drive in a northerly direction. *1202 Ultimately the defendant turned west and finally left the victim on a seldom travelled dirt road west of Lakeland. When the victim was discovered he was still alive and was bleeding profusely. He was making a gurgling noise, perhaps in an attempt to talk or perhaps because of respiratory problems. He was rolling from side to side and apparently ultimately began to have convulsions. His breathing was labored, his jaw was broken and teeth were broken out. The autopsy revealed that this small six year old child had received thirty blows, mostly on the head or neck. There were multiple fractures of the skull and a broken jaw. The autopsy further revealed blood in the stomach which had been in the stomach a sufficient length of time for the digestive process to begin. The child died after being transported to the local hospital.
The Court finds that it is clear from the evidence that two separate beatings occurred. The first, by the defendant's testimony, was administered with a steel rod at the location off South Florida Avenue, and the defendant threw the rod away before leaving that location. The defendant claims the use of no other weapon after that period of time, but it is inconceivable to the Court that the injuries that were found on the child could have been administered without the use of a weapon. It is clear to the Court that two separate beatings occurred with a considerable length of time between them, and that both beatings were brutal. There is no evidence as to when the child became unconscious so that he could suffer no further pain, nor as to when, if at all, he regained consciousness, but it is highly probable that the child suffered excruciating pain before dying. The child was abandoned while alive in a desolate area.
The other statutory aggravating circumstances are not applicable in this case.
As to the mitigating circumstances, the Court makes the following findings:
1. The defendant's history of prior criminal activity for which he has been convicted is not significant. [§ 921.141(6)(a), Fla. Stat. (1981).] Testimony was received during the penalty proceeding concerning a long history of illicit homosexual contacts. Some of these contacts were with minors. The Court finds that the testimony is insufficient to establish any harm to others in this activity, other than the contact itself. The Court does find that this history of homosexual contact with minors diminishes the weight to be given to this mitigating factor.
2. The next question on mitigation is whether the crime was committed while the defendant was under the influence of extreme mental or emotional disturbance. [§ 921.141(6)(b), Fla. Stat. (1981).] Dr. Henry Dee did not find the defendant was incompetent at the time of the offense or incompetent to proceed to trial, but did find that he had a psychosis of a schizophrenic type and indicates that at the time the act occurred he was uncontrolled emotionally, and panicked. Essentially the defendant has a personality disorder, such that when confronted with the possibility of disclosure he panicked and committed the acts with which we are concerned here.
It is clear from both the defendant's own testimony and that of other persons that he had drunk a large quantity of beer on the afternoon and evening of the acts in question. By his own testimony he had taken two Quaaludes after work that day and had smoked a number of marijuana cigarettes earlier. There was considerable testimony from numerous persons as to his state some time after the acts, in the late evening hours of that day and the early morning hours of the next day. The Court cannot find that the defendant was under the influence of extreme mental or emotional disturbance.
3. There is absolutely no evidence that the victim was a participant in the defendant's conduct, or that he consented *1203 to the act. [§ 921.141(6)(c), Fla. Stat. (1981).]
4. The defendant was not an accomplice in the crime, nor was his participation minor. He was the principal actor. [§ 921.141(6)(d), Fla. Stat. (1981).]
5. There is no evidence that the defendant was under extreme duress or under the substantial domination of any person. [§ 921.141(6)(e), Fla. Stat. (1981).]
6. As to F.S. 921.141(6)(f), there is evidence that the ability of the defendant to conform his conduct to the requirements of law was substantially impaired. The psychological tests done on Mr. Atkins indicated results on reality testing that are far below the critical minimum for the healthy. His understanding of the motives underlying the behavior of other people, as well as his understanding of the implications and consequences of what he does, is defective. The report of Dr. Dee indicates that the world is a highly frightening place for the defendant, and his general appearance and demeanor mask a great deal of aggressive content in his fantasy and his mental life generally. This seems to frighten him as well. As a result of this and other factors, he experiences extremely high levels of distress and anxiety from which he seeks relief in various kinds of drug intoxication, fantasy and acting out. His mental life and thought processes are odd and disorganized. He seems incapable of much rational analysis of even mildly emotional provoking situations. In balance, although the defendant is legally sane, the Court finds that his ability to conform his conduct to the requirements of the law was substantially impaired, and this is a mitigating circumstance. The Court finds that he did have the capacity to appreciate the criminality of his conduct.
7. The age of the defendant at the time of the offense was twenty six years. [§ 921.141(6)(g), Fla. Stat. (1981).] The Court does not find this to be a mitigating factor.
8. The Court does not find that any non-statutory mitigating circumstances exist.
The Court has considered all of the factors enumerated above and the recommendation of the jury. It is the ultimate finding and determination of the Court that the death penalty should be imposed upon the defendant, PHILLIP A. ATKINS.
(Bracketed references added). Upon our review of the findings and the record, we conclude that the trial court exercised reasoned judgment and engaged in real and meaningful reconsideration of sentence with a weighing of circumstances as required by law.
Appellant argues that the evidence of emotional disturbance should tip the scales in favor of a life sentence. It is clear that the trial judge did consider appellant's mental and emotional problems as factors to be weighed but concluded that they did not outweigh the proven aggravating circumstances calling for a sentence of death. It is not this Court's function to engage in a general de novo re-weighing of the circumstances. Rather, we are to examine the record to ensure that the findings relied upon are supported by evidence. We find that there is legally sufficient evidence to support the trial judge's findings of fact.
Having found the trial judge's factual conclusions supported by evidence, and having found that the trial judge weighed and considered the circumstances in the manner required by law, we can find no reason to disturb the court's judgment. We therefore affirm the sentence of death.
It is so ordered.
ADKINS, OVERTON, EHRLICH and SHAW, JJ., concur.
McDONALD, C.J., concurs with an opinion.
McDONALD, Chief Justice, concurring.
Because of the mental status of the defendant, had I been the trial judge it is unlikely that I would have imposed the *1204 death penalty. However, as a justice reviewing the actions of the trial judge, I cannot say it was error for the trial judge to do so. Accordingly, I concur in the affirmance of the death sentence.